**Patrick J. Geile**
**Bar No. 6975**
**FOLEY FREEMAN, PLLC**
**953 S. Industry Way**
**P.O. Box 10**
**Meridian, ID 83680**
**Phone: (208) 888-9111**
**FAX: (208) 888-5130**
*pgeile@foleyfreeman.com*

**Attorneys for Defendant**

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF IDAHO

| | |
|---|---|
| In re: | Case No. 17-40973-JMM |
| WELLS ALAN WYATT, | Chapter 7 |
| Debtor. | |
| BANNER BANK, | Adv. Case No. 18-08006-JMM |
| Plaintiff, | |
| vs. | |
| WELLS ALAN WYATT, | |
| Defendant. | |

## MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

COMES NOW the Defendant, Wells Alan Wyatt, by and through his attorney of record,

Patrick J. Geile of the firm Foley Freeman, PLLC, and hereby submits this memorandum in

support of Defendant's Motion for Summary Judgment ("Motion") as follows:

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 1**

## INTRODUCTION

1.      Plaintiff in this case alleges six separate causes of action against the Debtor objecting to the debtor's discharge and requesting that its debt be nondischargeable.

2.      These causes of action are all based on information from documents that the Debtor provided to the Plaintiff in connection with several loans made on or before August of 2016.

3.      The information in all of these documents is true and the Debtor never made any false statements in connection with these loans.

4.      Consequently, Plaintiff's six causes of action do not have a factual or legal basis for recovery, and they should all be dismissed.

## STATEMENT OF FACTS

5.      The Debtor, Wells Wyatt, engaged in a successful ranching operation that involved buying, feeding, and selling cattle for many years. *Affidavit of Wells Wyatt*, ¶ 2.

6.      Wyatt Livestock bought and sold cattle and owned cattle either outright or with other entities.  Wyatt Livestock has always been owned by Wells Wyatt and no one else.

7.      Wyatt Feeding fed cattle and operated a feedlot and was created in July 2013. Prior to April 2017 it had always been owned by Wells Wyatt and Candice Cooley.

8.      As part of that ranching operation, several entities were created including Wyatt Livestock, Inc., which was wholly owned by the Debtor and Wyatt Feeding, LLP, which was owned equally by Debtor and his girlfriend Candice Cooley. *Affidavit of Wells Wyatt*, ¶ 3–5.

9.      These entities obtained financing for their operation through loans and lines of credit provided to the Debtor by the Plaintiff, Banner Bank.  *Affidavit of Wells Wyatt*, ¶ 7.

10.     There are 4 loans identified in pages 3–6 of Plaintiff's Complaint:

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 2**

a. A Loan to Wyatt feeding for $500,000.00, #4021;

b. A loan to Wyatt Feeding for equipment in the amount of $57,000.00, #5311;

c. A loan to Wyatt Feeding for equipment in the amount of $95,000, #5338; and

d. A Loan to Wyatt Livestock in the principle amount of 2,000,000.00, #4514.

11.      There have been no allegations of any misrepresentations regarding documentation for the first three loans set forth above that relate to Wyatt Feeding. *Deposition of David Stirewalt*, p. 38, l. 1–23; p. 39, l. 7–14; p. 43, l. 10–13, p. 45, l. 10–13; p. 50, l. 8–25; p. 66–67, ll. 24–25, 1–2, p. 67, l. 3–24; *Affidavit of Wells Wyatt*, ¶ 13–14; *See also* Plaintiff's Complaint.

12.      All of the loans provided by Banner Bank were made on or before August of 2016. At that point in time, Debtor had already had a lending relationship with Banner Bank for at least two years. *Deposition of David Stirewalt*, p.54; l. 6–9; p. 118, l. 3–5; *Affidavit of Wells Wyatt*, ¶ 9.

13.      David Stirewalt is the commercial lender from Banner Bank that serviced the loans that were being provided to the Debtor and the Debtor's entities. *Affidavit of Wells Wyatt*, ¶ 9

14.      As part of that lending relationship, Mr. Stirewalt would request information from Debtor or his girlfriend, Candice Cooley, and they would provide the information to the Plaintiff. The borrower base certificates at issue in this case were created and submitted by Candice Cooley. Every single time that the Plaintiffs requested information, it was provided. *Deposition*

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 3**

*of David Stirewalt*, p. 21, l. 2–5; p. 34, l. 13–16; p. 36, l. 22–25, p. 37 1–5; p. 51, l.1–2; p.56, l. 21–25; p.57, ll. 1–3, 8–15, p.84, l. 1–3.

15.     According to both the Debtor and Mr. Stirewalt, the Debtor never provided any documentation that was not accurate, and he always told the truth.  *Deposition of David Stirewalt*, p. 38, l. 1–23; p. 39, l. 7–14; p. 43, l. 10–13, p. 45, l. 10–13; p. 50, l. 8–25; p. 66–67, ll. 24–25, 1–2, p. 67, l. 3–24; *Affidavit of Wells Wyatt*, ¶ 13–14.

16.     Mr. Stirewalt also traveled to where Debtor had livestock to inspect things once or twice per year. *Deposition of David Stirewalt*, p. 54, l. 6–16; *Affidavit of Wells Wyatt*, ¶ 19

17.     Based on these inspections, Mr. Stirewalt testified that the Debtor has never removed or destroyed collateral, and he has never concealed or hid any assets.  *Deposition of David Stirewalt*, p. 38, l. 12–16; p. 50, l. 22–25; p. 55, l. 17–19; p. 126, l. 17–19.

18.     One of the loans that Banner Bank provided was loan number 4514, which was roughly a $2,000,000 line of credit that Wyatt Livestock used to purchase cattle.  *Deposition of David Stirewalt*, p.52, l. 11–12.

19.     In connection with this loan, Mr. Stirewalt, the only person at Banner Bank that was really involved in the loan or the Debtor's operation, testified that he does not believe that the Debtor provided any false information or documentation.  *Deposition of David Stirewalt*, p. 50, l. 14–12; p. 84, l. 21–23.

20.     As part of the $2,000,000 line of credit, the Debtor was required to provide borrower base certificates to Banner Bank every month.  Since 2010, the information for these borrower base certificates was being provided by Debtor's then girlfriend, Candice Cooley, who did the books for the business. *Deposition of David Stirewalt*, p. 113, l. 4–12; p. 114, 2–7; p.118, l. 6–9.

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 4**

21.     These borrower base certificates reflect the actual value of the cattle without any offsets, so they do not show the cost of the actual cattle themselves. *Deposition of David Stirewalt*, p. 91, l. 11–14; p. 97, l. 15–18, p. 152, l. 7–16; *Affidavit of Wells Wyatt*, ¶ 16.

22.     Both the Debtor and Mr. Stirewalt testified that the information in these certificates is accurate. *Deposition of David Stirewalt*, p. 38, l. 1–23; p. 39, l. 7–14; p. 43, l. 10–13, p. 45, l. 10–13; p. 50, l. 8–25; p. 66–67, ll. 24–25, 1–2, p. 67, l. 3–24; *Affidavit of Wells Wyatt*, ¶ 13–14.

23.     The borrower base certificates reference the Debtor's ownership interest in the cattle because the Debtor had a partner, Timmerman, who also had an ownership interest in the cattle. *Deposition of David Stirewalt*, p. 60, l. 1–7; p. 86–87, ll. 19–25, 1, 9–17.

24.     Mr. Stirewalt and Banner Bank had knowledge of Timmerman's involvement in the Debtor's ranching operation and was aware that the Debtor was purchasing the cattle with Timmerman. *Deposition of David Stirewalt*, p. 78–79, ll. 24–25, 1–3, 9–22; p. 88, ll. 11–14, 22–25; p. 89, ll. 1–3, 20–22; p. 90–91, ll. 21–25, 1–2.

25.     Mr. Stirewalt and Banner Bank could also see that there were direct deposits being made into the Banner Bank account by Timmerman.  These deposits were typically for $100,000 to $200,000, which represented Debtor's share of the profits for the sale of cattle at the end of a year. *Deposition of David Stirewalt*, p. 80, l. 10–11; *Affidavit of Wells Wyatt*, ¶ 20.

26.     As part of the Debtor's agreement with Timmerman, the Debtor would purchase cattle, and Timmerman would reimburse the Debtor for the cattle purchased.  However, there were other costs associated with the arrangement including interest on feed advances and how the Debtor accounted for losses on cattle sales. *Affidavit of Wells Wyatt*, ¶ 20.

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 5**

27.     Unfortunately, there was significant drop in cattle prices during 2015 and 2016. These losses carried over in the Debtor's agreement with Timmerman and ultimately affected the amounts that Debtor received when the cattle was sold at the end of the year. *Affidavit of Wells Wyatt*, ¶ 15.

28.     The Debtor, however, always kept Mr. Stirewalt informed about the cattle operation and the Debtor would tell him when certain cattle were losing money. *Deposition of David Stirewalt*, p. 77, l. 16–21; *Affidavit of Wells Wyatt*, ¶ 10

29.     In December of 2016, the Debtor informed Mr. Stirewalt that there was a loss coming due to the drop in cattle prices. *Affidavit of Wells Wyatt*, ¶ 16.

30.     The Debtor only became aware of this loss in December of 2016 after the cattle were sold, and Timmerman informed the Debtor that his share of the losses on the cattle was approximately $55,000. This loss carried over into the next year made it nearly impossible for the Debtor to make his loan payments. *Affidavit of Wells Wyatt*, ¶ 16.

31.     Around this same time, the Debtor and his girlfriend of six years, Candice Cooley, split up. As part of the breakup, Debtor received Candice's 50% ownership interest in Wyatt Feeding. *Affidavit of Wells Wyatt*, ¶ 22–23.

32.     Debtor also discovered that Candice was transferring money from him, and she signed a note agreeing to repay roughly $160,000.00. *Affidavit of Wells Wyatt*, ¶ 25.

33.     When Candice left, she also transferred certain farm equipment out of Wyatt Feeding into an entity known as Patrone. These transfers included three 2016 Peterbuilt Trucks valued at over $110,000.00 each. These transfers were not authorized by the Debtor, and they were disclosed in the Debtor's bankruptcy schedules. *Affidavit of Wells Wyatt*, ¶¶ 24, 26.

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 6**

34.     Moreover, Candice Cooley also filed bankruptcy, and she identified that she owned the equipment in her bankruptcy schedules. *Affidavit of Wells Wyatt*, ¶ 27.

35.     The Plaintiff knows where this equipment is because both the Debtor and Candice Cooley have disclosed it to them. *Affidavit of Wells Wyatt*, ¶ 28.

36.     Moreover, the Debtor has provided a plethora of information to both the Chapter 7 Trustee and the Plaintiff including four days of 2004 examination, his computer, a copy of his hard drive, and significant documentation including profit and loss statements and tax returns. *Affidavit of Wells Wyatt*, ¶ 29.

37.     The Debtor has never destroyed any documents, and the Plaintiff and the Chapter 7 Trustee have access to all of these records. *Affidavit of Wells Wyatt*, ¶ 30.

## STANDARD OF REVIEW

38.     Federal Rule of Bankruptcy Procedure 7056 incorporates Federal Rule of Civil Procedure 56(a).  Rule 56 states that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fe. R. Civ. P. 56(a).  Therefore the party seeking summary judgment "bears the initial burden of demonstrating the absence of a genuine issue of material fact, after which the opposing party must provide evidence establishing a genuine issue of material fact." Gugino v. Clark's Crystal Springs Ranch, LLC (in re Clark), 2014 WL 2895428, *2 (Bankr. D. Idaho 2014).

39.     Since a denial of a debtor's discharge is such an extreme remedy, "[o]bjections to discharge are liberally construed in favor of the debtor and against the objector."  Kohler v. Etman (In re Kohler), 2016 Bankr. LEXIS 592 (9th Cir. BAP 2016).  "For that reason, the

objector bears the burden to prove by a preponderance of the evidence that the debtor's discharge should be denied."  Id.

40.    Rule 56 of the Federal Rules of Procedure apply to bankruptcy adversary proceedings by Rule 7056 of the Federal Rules of Bankruptcy Procedure.  King v. Westmark (In re Westmark), 2012 Bankr. LEXIS 5270 (Bankr. D. Idaho 2012).

## ARGUMENT

### A. Count One of Plaintiff's Complaint should be dismissed because the Debtor did not transfer, remove, destroy, mutilate, or conceal property of the debtor or property of the estate.

41.    A party seeking a denial discharge 11 USC § 727(a)(2)(A) and (B) must show: "(1) the disposition of property by transfer, removal destruction, or mutilation, or concealment of such property, and (2) that Debtor acted with actual intent to hinder, delay, or defraud a creditor or the trustee."  Gugino v. Clark (In re Clark), 525 B.R. 442, 457 (Bankr. D. Idaho 2015); United States Tr. v. Resler (In re Resler), 583 B.R. 238, 242 (Bankr. D. Idaho 2018).

42.    In order to prevail under this section, the Plaintiff must show actual intent, which may be established by circumstantial evidence.  Id.

43.    Here, the Plaintiffs have not provided any evidence that there was a disposition of property.  Even if there was a disposition of property, there is absolutely no evidence that the Debtor intended to hinder, delay, or defraud the Plaintiff.  In fact, Plaintiff's own employee testified that the Debtor never made any false statements and that the Debtor did not conceal or destroy any collateral.

44.    The only feasible transfer is the farm equipment that Candice Cooley transferred from Wyatt Feeding to Patrone without the Debtor's authorization.

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 8**

45.     The Debtor disclosed that Candice made this unauthorized transfer to herself in his bankruptcy schedules, and Candice Cooley herself identified herself as the owner of the equipment in her own bankruptcy petition.  See Affidavit of Patrick Geile Exhibits S and T.

46.     Candice may believe that certain items were "hidden" by Wells, but she identified the items she believed to be hidden in the appraisals done by Don Patterson in contemplation of Wells bankruptcy, which were located at the Debtors residence.  In other words they wer in plain sight on the debtors property, not hidden. *Affidavit of Patrick Geile* paragraph 5

47.     This equipment was never transferred by the Debtor and it has never been concealed.  Both the Debtor and Candice Cooley have disclosed its location, and the Plaintiff is well aware of where it is located.

48.     Because it is undisputed that the Debtor did not make a disposition of property and there is absolutely no evidence that the debtor had the requisite intent to prevail on a 727(a)(2) action, Count One of Plaintiff's Complaint should be dismissed.

B.  **Count Two of Plaintiff's Complaint should be dismissed because the Debtor did not conceal, destroy, mutilate, falsify, or fail to keep any recorded information.**

49.     A party seeking a denial of discharge under 11 USC § 727(a)(3) must prove that "the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case."

50.     The purpose of 11 USC 727(a)(3) is to motivate debtors to make a full and true presentation of their financial affairs.  Brandenfels v. Ticor Title Ins. Co. (In re Brandenfels), 2015 Bankr. LEXIS 3410 (9th Cir. BAP 2015).

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 9**

51.     In order to assess the sufficiency of those records under § 727(a)(3), the court

engages in a two-part analysis.  First, a creditor makes a prima facie case by showing "(1) that

the debtor failed to maintain and preserve adequate records, and (2) that such failure makes it

impossible to ascertain the debtor's financial condition and material business transactions."  Id.

52.     "If the creditor meets his burden of showing inadequate or nonexistent records,

the burden of proof then shifts to the debtor to justify the inadequacy or nonexistence of the

records."  Id.

53.     Here, the Debtor made a full and complete disclosure of his financial affairs in his

bankruptcy schedules in addition to the significant documentation that Debtor provided to the

Plaintiff in connection with his loans.

54.     There is absolutely no evidence that the Debtor did anything but cooperate with

the Chapter 7 Bankruptcy Trustee and the Plaintiff.  The Debtor even turned over his computer

and hard drive to ensure that the Plaintiff and the Chapter 7 Bankruptcy Trustee had every piece

of information that they could possibly want.  Debtor at his own expense provided a mirror copy

of his hard drive to counsel for Banner Bank at his own expense.

55.     The Plaintiff's employee, Mr. Stirewalt, testified that the Debtor always provided

documentation to the Plaintiff upon request and that this information was accurate.  These

included monthly borrower base certificates from 2015 through August of 2017.  Debtor also

produced taxes and financial statements to Banner bank.  The Bower Base certificates included

significant documentation supporting the Borrower Base certificate.

56.     All of this undisputed evidence strongly counters the empty assertion that the

Debtor somehow concealed or destroyed records.

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 10**

57.    Because the Plaintiff has all of the Debtor's financial records, it would be even more unlikely that supposed missing records would somehow make it impossible to ascertain the Debtor's financial condition.

58.    The Plaintiff has failed to provide any evidence that the Debtor did anything but cooperate in providing documentation to the Plaintiff.  The Plaintiff has intimate knowledge of the Debtor's financial condition from the documents provided.  The Debtor did not conceal or destroy any records.  As a result, Count Two of Plaintiff's Complaint should be dismissed.

**C.  Count Three of Plaintiff's Complaint should be dismissed because the Debtor has not made a false oath or withheld information from the trustee in this case.**

59.    A party seeking a denial of discharge under 11 USC § 727(4) must prove that "the debtor knowingly and fraudulently, *in or in connection with the case* . . . (A) made a false oath or account . . ." (emphasis added).

60.    More specifically, the Plaintiff must prove, by a preponderance of the evidence that "(1) the debtor made a false oath in connection with the case; (2) the oath related to a material fact; (3) the oath was made knowingly; and (4) the oath was made fraudulently." Kohler v. Etman (In re Kohler), 2016 Bankr. LEXIS 592 (9th Cir. BAP 2016).

61.    However, statements that are made prior to a bankruptcy proceeding being filed cannot be made "in connection with the case" because no bankruptcy case existed at the time the statements were made.  *See Hopper v. Lewis* (In re Lewis), 551 B.R. 41, 53–54 (Bankr. E. Dist. Cal. 2016).

62.    Count Four, like the other causes of action in Plaintiffs Complaint, focuses solely on statements made in borrowing base certificates, financial statements, and other similar documents that were all provided to the Plaintiff well before the Debtor's bankruptcy case was filed.

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 11**

63.     Consequently, these statements were not made "in connection with" the bankruptcy case because no bankruptcy case existed when these statements were made.

64.     Even if these statements were somehow made in connection with the bankruptcy case, all of the information provided by the Debtor in these statements is true.

65.     Since the Plaintiff has failed to plead any facts that allege that Debtor made any statements "in connection with" his bankruptcy case, Count Three of Plaintiff's Complaint should be dismissed.

D. **Count Four of Plaintiff's Complaint should be dismissed because the Debtor has provided significant and satisfactory explanation regarding his assets and liabilities in this case.**

66.     A party seeking denial of a discharge under 11 USC § 727(a)(5) must prove that "[t]he debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities."

67.     In order to prevail under this section, the Plaintiff must prove that: "(1) the debtor at one time, not too remote from the bankruptcy petition date, owned identifiable assets; (2) on the date the bankruptcy petition was filed or order of relief granted, the debtor no longer owned the assets; and (3) the bankruptcy pleadings or statement of financial affairs do not reflect an adequate explanation for the disposition of the assets."  Sethi v. Wells Fargo Bank, N.A. (In re Sethi), 2014 Bankr. LEXIS 2832 (9th Cir. BAP 2014).

68.     Once again, Plaintiff's Complaint is completely devoid of any facts that would support this cause of action.  Nowhere in the Complaint does it identify a loss of assets or a deficiency of assets.  Instead, the Plaintiff once again rests its case on statements that the Debtor made in borrowing base certificates and financial statements that were given well before this bankruptcy case was filed.

69.     Even if Plaintiff's Complaint was appropriately plead, the Debtor's statement of

financial affairs ("SOFA") discloses multiple transfers that were made in connection with his

business operations and his breakup with Candice Cooley.  The SOFA also discloses that

Candice Cooley made an unauthorized transfer of vehicles from Wyatt Livestock to Patrone

Livestock, LLC.

70.     Candice Cooley identifies her ownership of this equipment in her own bankruptcy

schedules.

71.     These statements provide a more than adequate explanation regarding the

disposition of these assets.

72.     The unauthorized transfers made by Candice Cooley also adequately explain any

difference in value between the Debtor's financial statements and his bankruptcy schedules.

73.     Since it is undisputed that the Debtor has provided significant explanation and the

information is disclosed in both the Debtor's and Candice Cooley's bankruptcy petition, Count

Four of Plaintiff's Complaint should be dismissed.

**E.  Count Five of Plaintiff's Complaint should be dismissed because the Debtor did not
obtain money, property, or credit by means of a false written statement.**

74.     A party seeking a denial of discharge under 11 § USC 523(a)(2)(B) must prove

that the Debtor obtained "money, property, services, or an extension, renewal, or refinancing of

credit, to the extent obtained by . . . use of a statement in writing . . . (i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition; (iii) on which the creditor to who

the debtor is liable for such money, property, service, or credit reasonably relied; and (iv) that the

debtor caused to be made or published with intent to deceive."

75.     The Ninth Circuit has found that a § 523(a)(2)(B) action requires proof of the

following elements: "(1) a representation of fact by the debtor, (2) that was material, (3) that the

debtor knew at the time to be false, (4) that the debtor made with the intention of deceiving the creditor, (5) upon which the creditor relied, (6) that the creditor's reliance was reasonable, (7) that damage proximately resulted from the representation." Petro Concepts, Inc. v. Mundt (In re Mundt), 2009 Bankr. LEXIS 4245 (Bankr. D. Idaho 2009).

76.     Here, the Debtor did not prepare any of the borrowing base certificates, financial statements, or other similar documents.  These documents were prepared by Candice Cooley.

77.     Further, the information provided in these borrower base certificates, financial statements, and other similar documents was true.  The Plaintiff's own employee associated with the Debtor's accounts testified that the Debtor never provided him with any false or inaccurate information in connection with the loans.

78.     Mr. Stirewalt also testified that the missing piece of information would not have been included on the borrower base certificates.

79.     The Debtor never obtained any money, property, credit or anything else from the borrower base certificates that he provided.  The last loan was obtained in August of 2016.  Additionally, there was no additional money that was provided in the loan from August of 2016 because it was simply an augmentation of the line of credit to cover the interest payment from the previous year.  In other words the line had been increased from roughly 1.8 million to 2 million, but the additional funds were used to pay accrued interest.

80.     In late 2016 Wells Wyatt informed Mr. Stirewalt that there was going to be a loss on the cattle, and he continued his ranching efforts and made his best attempts to pay back the loan.

81.     Because the Debtor did not obtain any property, services, or credit from the borrower base certificates that he provided, a denial of discharge under 11 USC § 523(a)(2)(B) is

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 14**

not appropriate.  Further, none of borrower base certificates were false because they contained all

of the information that Banner Bank was requesting from the Debtor.  As a result, Count Five of

Plaintiffs Complaint should be dismissed.

**F.  Count Six of Plaintiff's Complain should be dismissed because the Debtor did not obtain money, property, or credit through false pretenses or a misrepresentation.**

82.     A party seeking a denial of discharge under 11 USC 523(a)(2)(A) must prove that

the Debtor obtained "money, property, services, or an extension, renewal, or refinancing of

credit, to the extent obtained by . . . false pretenses, a false representation, or actual fraud, other

than a statement respecting the debtor's or an insider's financial condition."

83.     This requires that the Plaintiff prove the following elements: "(1)

misrepresentation, fraudulent omission or deceptive conduct by the debtor; (2) knowledge of the

falsity or deceptiveness of his statement or conduct; (3) an intent to deceive; (4) justifiable

reliance by the creditor on the debtor's statement or conduct; and (5) damage to the creditor

proximately caused by its reliance on the debtor's statement or conduct."  King v. Westmark (In

re Westmark), 2012 Bankr. LEXIS 5270 (Bankr. D. Idaho 2012).

84.     "Generally, fraud under § 523(a)(2)(A) must be 'actual or positive fraud and not

fraud implied in law' and thus must have been actually committed by the debtor."  Id.

85.     Here, the Debtor never made any statements to Banner Bank that were untrue or

misleading.  In fact, Mr. Stirewalt was the only representative at Banner Bank that the Debtor

spoke to, and he testified that the Debtor did not make any false statements, omissions, or

misrepresentations in connection with the loans that were obtained.

86.     Again, all of the loans were provided well before the Debtor became aware of any

additional liability he had to Timmerman, so any statements made by the Debtor could not have

been in order to obtain credit, financing, property, etc.

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 15**

87.     Further, everything that the Debtor told the Plaintiffs was true and the Debtor always provided any information they requested of him.

88.     As a result, County Six of Plaintiff Complaint should be dismissed.

## CONCLUSION

89.     The Debtor has never made any false or misleading statements.  He has never concealed or transferred any property.  He has always been truthful and forthcoming with any information that is requested of him.

90.     As a result, there are no disputed facts that warrant that this case proceed to trial, and summary judgment dismissing Counts 1 through 6 of Plaintiff's Complaint is appropriate at this time.

DATED this 18th day of January, 2019.

FOLEY FREEMAN, PLLC


/s/ Patrick J. Geile
Patrick J. Geile
Attorneys for Defendant

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 18th day of January, 2019, I caused to be served a true and correct copy of the foregoing document by the method indicated below, and addressed to the following:

Randall A. Peterman                           X      CM/ECF Notice
Alexander P. McLaughlin
Givens Pursley, LLP
601 W. Bannock St.
PO Box 2720
Boise, ID 83701-2720


                                        /s/ Patrick J. Geile
                                        Patrick J. Geile