**Patrick J. Geile**
Bar No. 6975
FOLEY FREEMAN, PLLC
953 S. Industry Way
P.O. Box 10
Meridian, ID 83680
Phone: (208) 888-9111
FAX: (208) 888-5130
pgeile@foleyfreeman.com

**Attorneys for Defendant**

### UNITED STATES BANKRUPTCY COURT

### DISTRICT OF IDAHO

| | |
|---|---|
| In re:<br><br>**WELLS ALAN WYATT,**<br><br>Debtor. | Case No. 17-40973-JMM<br><br>Chapter 7 |
| **BANNER BANK,**<br><br>Plaintiff,<br><br>vs.<br><br>**WELLS ALAN WYATT,**<br><br>Defendant. | Adv. Case No. 18-08006-JMM |

### PRETRIAL MEMORANDUM

COMES NOW the Defendant, Wells Alan Wyatt, by and through his attorney of record, Patrick J. Geile of the firm Foley Freeman, PLLC, and hereby submits their Pretrial Memorandum pursuant to this Court's Scheduling Order entered on August 23, 2018.

PRETRIAL MEMORANDUM - 1

## WITNESSES

1. Wells A. Wyatt
   2095 East 600 South
   Hazelton, ID 83335

2. Candice Cooley
   119 Park Street
   Hazelton, ID 83335

3. Bruce W. Nelson
   C/O Randy Peterman

4. David Stirewalt

## EXHIBITS

See attached Exhibit list.

## PROCEDURE

1. The Debtor filed for chapter 7 bankruptcy on November 3, 2017.

2. This adversary complaint was filed on February 14, 2018.

3. The Debtor moved for summary judgment on all counts set forth in Banner's adversary complaint

4. The court granted summary judgment as to Count One and Count Three.

5. The remaining counts relate to failure to keep adequate records, a failure to satisfactorily explain the diminution of assets, and fraud pursuant to 11 USC 523 (a)(2)(A) and (a)(2)(B)

### Relevant Facts

1. The Debtor, Wells Wyatt, engaged in a successful ranching operation that involved buying, feeding, and selling cattle for many years.

**PRETRIAL MEMORANDUM - 2**

2. Wyatt Livestock bought and sold cattle and owned cattle either outright or with other entities. Wyatt Livestock has always been owned by Wells Wyatt and no one else.

3. Wyatt Feeding fed cattle and operated a feedlot and was created in July 2013. Prior to April 2017 it had always been owned by Wells Wyatt and Candice Cooley.

4. As part of that ranching operation, several entities were created including Wyatt Livestock, Inc., which was wholly owned by the Debtor and Wyatt Feeding, LLP, which was owned equally by Debtor and his girlfriend Candice Cooley.

5. These entities obtained financing for their operation through loans and lines of credit provided to the Debtor by the Plaintiff, Banner Bank.

6. There are 4 loans identified in pages 3–6 of Plaintiff's Complaint:

   a. A Loan to Wyatt feeding for $500,000.00, #4021;

   b. A loan to Wyatt Feeding for equipment in the amount of $57,000.00, #5311;

   c. A loan to Wyatt Feeding for equipment in the amount of $95,000, #5338; and

   d. A Loan to Wyatt Livestock in the principle amount of 2,000,000.00, #4514.

7. There have been no specific allegations of any misrepresentations regarding documentation for the first three loans set forth above that relate to Wyatt Feeding.

8. All of the loans provided by Banner Bank were made on or before August of 2016. At that point in time, Debtor had already had a lending relationship with Banner Bank for almost a decade.

**PRETRIAL MEMORANDUM - 3**

9. David Stirewalt is the commercial lender from Banner Bank that serviced the loans that were being provided to the Debtor and the Debtor's entities.

10. As part of that lending relationship, Mr. Stirewalt would request information from Debtor or his girlfriend, Candice Cooley, and they would provide the information to the Plaintiff. The borrower base certificates at issue in this case were created and submitted by Candice Cooley. Every single time that the Plaintiffs requested information, it was provided.

11. Mr. Stirewalt also traveled to where Debtor had livestock to inspect things once or twice per year.

12. One of the loans that Banner Bank provided was loan number 4514, which was roughly a $2,000,000 line of credit that Wyatt Livestock used to purchase cattle.

13. As part of the $2,000,000 line of credit, the Debtor was required to provide borrower base certificates to Banner Bank every month. Since 2010, the information for these borrower base certificates was being provided by Debtor's then girlfriend, Candice Cooley, who did the books for the business.

14. These borrower base certificates reflect the actual value of the cattle without any offsets, so they do not show the cost of the actual cattle themselves.

15. Both the Debtor and Mr. Stirewalt testified that the information in these certificates is accurate.

16. The borrower base certificates reference the Debtor's ownership interest in the cattle because the Debtor had a partner, Timmerman, who also had an ownership interest in the cattle.

**PRETRIAL MEMORANDUM - 4**

17. Mr. Stirewalt and Banner Bank had knowledge of Timmerman's involvement in the Debtor's ranching operation and was aware that the Debtor was purchasing the cattle with Timmerman.

18. Mr. Stirewalt and Banner Bank could also see that there were direct deposits being made into the Banner Bank account by Timmerman. These deposits were typically for $100,000 to $200,000, which represented Debtor's share of the profits for the sale of cattle at the end of a year.

19. As part of the Debtor's agreement with Timmerman, the Debtor would purchase cattle, and Timmerman would reimburse the Debtor for the cattle purchased. However, there were other costs associated with the arrangement including interest on feed advances and how the Debtor accounted for losses on cattle sales.

20. Unfortunately, there was significant drop in cattle prices during 2015 and 2016. These losses carried over in the Debtor's agreement with Timmerman and ultimately affected the amounts that Debtor received when the cattle was sold at the end of the year.

21. The Debtor, however, always kept Mr. Stirewalt informed about the cattle operation and the Debtor would tell him when certain cattle were losing money.

22. In December of 2016, the Debtor informed Mr. Stirewalt that there was a loss coming due to the drop in cattle prices.

23. The Debtor only became aware of this loss in December of 2016 after the cattle were sold, and Timmerman informed the Debtor that his share of the losses on the cattle was approximately $55,000. This loss carried over into the next year made it nearly impossible for the Debtor to make his loan payments.

**PRETRIAL MEMORANDUM - 5**

24. Around this same time, the Debtor and his girlfriend of six years, Candice Cooley, split up. As part of the breakup, Debtor received Candice's 50% ownership interest in Wyatt Feeding.

25. Debtor also discovered that Candice was transferring money from him, and she signed a note agreeing to repay roughly $160,000.00.

26. When Candice left, she also transferred certain farm equipment out of Wyatt Feeding and/or livestock into an entity known as Patrone. These transfers included three 2016 Peterbuilt Trucks valued at over $110,000.00 each. These transfers were not authorized by the Debtor, and they were disclosed in the Debtor's bankruptcy schedules.

27. Moreover, Candice Cooley also filed bankruptcy, and she identified that she owned the equipment in her bankruptcy schedules.

28. The Plaintiff knows where this equipment is because both the Debtor and Candice Cooley have disclosed it to them.

29. Moreover, the Debtor has provided a plethora of information to both the Chapter 7 Trustee and the Plaintiff including four days of 2004 examination, his computer, a copy of his hard drive, and significant documentation including profit and loss statements and tax returns.

30. The Debtor has never destroyed any documents, and the Plaintiff and the Chapter 7 Trustee have access to all of these records.

### A. Debtor did not conceal, destroy, mutilate, falsify, or fail to keep any recorded information.

31. A party seeking a denial of discharge under 11 USC § 727(a)(3) must prove that "the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's

financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case."

32. The purpose of 11 USC 727(a)(3) is to motivate debtors to make a full and true presentation of their financial affairs. Brandenfels v. Ticor Title Ins. Co. (In re Brandenfels), 2015 Bankr. LEXIS 3410 (9th Cir. BAP 2015).

33. In order to assess the sufficiency of those records under § 727(a)(3), the court engages in a two-part analysis. First, a creditor makes a prima facie case by showing "(1) that the debtor failed to maintain and preserve adequate records, and (2) that such failure makes it impossible to ascertain the debtor's financial condition and material business transactions." Id.

34. "If the creditor meets his burden of showing inadequate or nonexistent records, the burden of proof then shifts to the debtor to justify the inadequacy or nonexistence of the records." Id.

35. Here, the Debtor made a full and complete disclosure of his financial affairs in his bankruptcy schedules in addition to the significant documentation that Debtor provided to the Plaintiff in connection with his loans.

36. There is absolutely no evidence that the Debtor did anything but cooperate with the Chapter 7 Bankruptcy Trustee and the Plaintiff. The Debtor even turned over his computer and hard drive to ensure that the Plaintiff and the Chapter 7 Bankruptcy Trustee had every piece of information that they could possibly want. Debtor at his own expense provided a mirror copy of his hard drive to counsel for Banner Bank at his own expense.

37. The Plaintiff's employee, Mr. Stirewalt, testified that the Debtor always provided documentation to the Plaintiff upon request and that this information was accurate. These included monthly borrower base certificates from 2015 through August of 2017. Debtor also

**PRETRIAL MEMORANDUM - 7**

produced taxes and financial statements to Banner bank. The Bower Base certificates included significant documentation supporting the Borrower Base certificate.

38. All of this undisputed evidence strongly counters the empty assertion that the Debtor somehow concealed or destroyed records.

39. Because the Plaintiff has all of the Debtor's financial records, it would be even more unlikely that supposed missing records would somehow make it impossible to ascertain the Debtor's financial condition.

40. The Plaintiff has failed to provide any evidence that the Debtor did anything but cooperate in providing documentation to the Plaintiff. The Plaintiff has intimate knowledge of the Debtor's financial condition from the documents provided. The Debtor did not conceal or destroy any records. .

**B. Debtor has provided significant and satisfactory explanation regarding his assets and liabilities in this case.**

41. A party seeking denial of a discharge under 11 USC § 727(a)(5) must prove that "[t]he debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities."

42. In order to prevail under this section, the Plaintiff must prove that: "(1) the debtor at one time, not too remote from the bankruptcy petition date, owned identifiable assets; (2) on the date the bankruptcy petition was filed or order of relief granted, the debtor no longer owned the assets; and (3) the bankruptcy pleadings or statement of financial affairs do not reflect an adequate explanation for the disposition of the assets." Sethi v. Wells Fargo Bank, N.A. (In re Sethi), 2014 Bankr. LEXIS 2832 (9th Cir. BAP 2014).

43. Once again, Plaintiff's Complaint is completely devoid of any facts that would support this cause of action. Nowhere in the Complaint does it identify a loss of assets or a

deficiency of assets. Instead, the Plaintiff once again rests its case on statements that the Debtor made in borrowing base certificates and financial statements that were given well before this bankruptcy case was filed.

44. Even if Plaintiff's Complaint was appropriately plead, the Debtor's statement of financial affairs ("SOFA") discloses multiple transfers that were made in connection with his business operations and his breakup with Candice Cooley. The SOFA also discloses that Candice Cooley made an unauthorized transfer of vehicles from Wyatt Livestock to Patrone Livestock, LLC.

45. Candice Cooley identifies her ownership of this equipment in her own bankruptcy schedules.

46. These statements provide a more than adequate explanation regarding the disposition of these assets.

47. The unauthorized transfers made by Candice Cooley also adequately explain any difference in value between the Debtor's financial statements and his bankruptcy schedules.

48. The Debtor has provided significant explanation and the information is disclosed in both the Debtor's and Candice Cooley's bankruptcy petition.

### C. **The Debtor did not obtain money, property, or credit by means of a false written statement.**

49. A party seeking a denial of discharge under 11 § USC 523(a)(2)(B) must prove that the Debtor obtained "money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . use of a statement in writing . . . (i) that is materially false; (ii) respecting the debtor's or an insider's financial condition; (iii) on which the creditor to who the debtor is liable for such money, property, service, or credit reasonably relied; and (iv) that the debtor caused to be made or published with intent to deceive."

**PRETRIAL MEMORANDUM - 9**

50. The Ninth Circuit has found that a § 523(a)(2)(B) action requires proof of the following elements: "(1) a representation of fact by the debtor, (2) that was material, (3) that the debtor knew at the time to be false, (4) that the debtor made with the intention of deceiving the creditor, (5) upon which the creditor relied, (6) that the creditor's reliance was reasonable, (7) that damage proximately resulted from the representation." Petro Concepts, Inc. v. Mundt (In re Mundt), 2009 Bankr. LEXIS 4245 (Bankr. D. Idaho 2009).

51. Here, the Debtor did not prepare any of the borrowing base certificates, financial statements, or other similar documents. These documents were prepared by Candice Cooley.

52. Further, the information provided in these borrower base certificates, financial statements, and other similar documents was true. The Plaintiff's own employee associated with the Debtor's accounts testified that the Debtor never provided him with any false or inaccurate information in connection with the loans.

53. Mr. Stirewalt also testified that the missing piece of information would not have been included on the borrower base certificates.

54. The Debtor never obtained any money, property, credit or anything else from the borrower base certificates that he provided. The last loan was obtained in August of 2016. Additionally, there was no additional money that was provided in the loan from August of 2016 because it was simply an augmentation of the line of credit to cover the interest payment from the previous year. In other words the line had been increased from roughly 1.8 million to 2 million, but the additional funds were used to pay accrued interest.

55. In late 2016 Wells Wyatt informed Mr. Stirewalt that there was going to be a loss on the cattle, and he continued his ranching efforts and made his best attempts to pay back the loan.

56. Because the Debtor did not obtain any property, services, or credit from the borrower base certificates that he provided, a denial of discharge under 11 USC § 523(a)(2)(B) is not appropriate. Further, none of borrower base certificates were false because they contained all of the information that Banner Bank was requesting from the Debtor.

D. **The Debtor did not obtain money, property, or credit through false pretenses or a misrepresentation.**

57. A party seeking a denial of discharge under 11 USC 523(a)(2)(A) must prove that the Debtor obtained "money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition."

58. This requires that the Plaintiff prove the following elements: "(1) misrepresentation, fraudulent omission or deceptive conduct by the debtor; (2) knowledge of the falsity or deceptiveness of his statement or conduct; (3) an intent to deceive; (4) justifiable reliance by the creditor on the debtor's statement or conduct; and (5) damage to the creditor proximately caused by its reliance on the debtor's statement or conduct." King v. Westmark (In re Westmark), 2012 Bankr. LEXIS 5270 (Bankr. D. Idaho 2012).

59. "Generally, fraud under § 523(a)(2)(A) must be 'actual or positive fraud and not fraud implied in law' and thus must have been actually committed by the debtor." Id.

60. Here, the Debtor never made any statements to Banner Bank that were untrue or misleading. In fact, Mr. Stirewalt was the only representative at Banner Bank that the Debtor spoke to, and he testified that the Debtor did not make any false statements, omissions, or misrepresentations in connection with the loans that were obtained.

**PRETRIAL MEMORANDUM - 11**

61. Again, all of the loans were provided well before the Debtor became aware of any additional liability he had to Timmerman, so any statements made by the Debtor could not have been in order to obtain credit, financing, property, etc.

62. Further, everything that the Debtor told the Plaintiffs was true and the Debtor always provided any information they requested of him.

DATED this 15th day of May, 2019.

                                                    FOLEY FREEMAN, PLLC

                                                    /s/ Patrick J. Geile
                                                    Patrick J. Geile
                                                    Attorney for Defendant

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 15th day of May, 2019, I caused to be served a true and correct copy of the foregoing document by the method indicated below, and addressed to the following:

| | | |
|---|---|---|
| Randall A. Peterman | _X_ | CM/ECF Notice |
| Alexander P. McLaughlin | | |
| Givens Pursley, LLP | | |
| 601 W. Bannock St. | | |
| PO Box 2720 | | |
| Boise, ID 83701-2720 | | |

                                                    /s/ Patrick J. Geile
                                                    Patrick J. Geile